UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THE NEW YORK TIMES COMPANY and
CHARLES SAVAGE,

                              Plaintiffs,                    10 CV 7920 (RPP)
                - against -

                                                             **OPINION AND ORDER**

FEDERAL BUREAU OF INVESTIGATION,

                              Defendant.
-----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        On November 18, 2010, the New York Times Company ("NYT") and Charles Savage ("Savage"), a NYT reporter, filed this Complaint against the Federal Bureau of Investigation ("FBI" or "Defendant") alleging violations of the Freedom of Information Act, 5 U.S.C. § 522  ("FOIA").  The Complaint originally contained two causes of action, each involving FOIA Requests made by Mr. Savage in November 2009, only one of which, the Assessment Request, is now the subject of Plaintiffs' motion for summary judgment and Defendant's cross motions.

    The Complaint states that "in 2009 Mr. Savage submitted the Assessment Request seeking statistics on the use of Assessments." (Compl. ¶ 15.)  In a declaration dated April 15, 2011 ("Savage Decl."), Mr. Savage identifies the FOIA Assessment Request as Exhibit G to the Declaration of David McGraw dated February 24, 2011 ("McGraw Decl."). (See Declaration of Charles Savage date April 15, 2011 ("Savage Decl.") ¶ 6.)  The FOIA Request Form for the Assessment Request submitted by Mr. Savage reads as follows:

> Statistics on the aggregate results of assessments the FBI has conducted using the new authorities provided by the AG Guidelines that were put into effect in December 2008.  Breaking down the numbers into each of the six types of

1

>assessments, how many were converted into predicated investigations (preliminary or full investigations) based upon the information developed in those assessments and how many were closed? How many are still ongoing? Please provide the most up to date numbers available at the time the reply to this request is provided. (Note: the existence of these statistics was referenced in the FBI's response to question 15 from Senator Feingold in the written questions for the record arising from the March 25, 2009, Senate Judiciary Committee hearing on oversight of the FBI. The FBI answers were sent to Congress on Sept. 15, 2009.)

(McGraw Decl., Ex. G.)  Mr. Savage later narrowed the FOIA Request to "the data contained in the FBI's response to Sen. Russell Feingold's question at a March 25, 2009 Senate [Judiciary Committee] oversight hearing." (Savage Decl. ¶ 6.)

By motion dated February 24, 2011 Plaintiffs moved for an order granting summary judgment as to the FOIA requests pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P") 56.[1] On March 25, 2011, Defendant Federal Bureau of Investigation ("FBI") cross-moved for summary judgment and moved to dismiss the action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff filed a reply brief on April 18, 2011. On September 1, 2011 oral argument was held on the motions before the Court. For the following reasons, Plaintiffs' motion for summary judgment is denied and Defendants motion to dismiss is granted.

**I.    Background**

*Assessment Statistics Request*

"Assessments" allow agents to use authorized investigative techniques to gather information and intelligence on individuals, groups, and organizations that may be involved in activities that are criminal or threaten national security. (Declaration of David M. Hardy dated

---

[1] By stipulation dated May 23, 2011, the parties informed the Court that the FBI had produced the requested SIRT information and the related overview report. (See Stipulation dated May 23, 2011, ECF No. 21.) Therefore, Count II of Plaintiff's Complaint is dismissed as moot by stipulation of the parties.

March 25, 2011 ("Hardy Decl.") ¶ 3 n.2.)  The information gathered in these assessments help the FBI determine whether further investigation is necessary. Id.  "Assessments may be used when the FBI obtains 'an allegation or information' or an 'articulable factual basis' concerning crimes or threats to national security, and the matter can be investigated or resolved through the relatively non-intrusive methods authorized in assessments." (Id.)

      Following Mr. Savage's November 4, 2009 Assessment Request, the FBI sent a letter to the NYT on December 11, 2009 acknowledging receipt of the Assessment Request and stating it was currently reviewing its files. (Hardy Decl. ¶ 23.)  On December 23, 2009, the FBI denied the Assessment Request citing exemptions contained in 5 U.S.C. § 522(b)(5) ("Exemption 5") because the information was still in draft form. (McGraw Decl., Ex. H.)  Exemption 5 exempts the disclosure of all "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 522(b)(5).  On December 30, 2009, the NYT filed an administrative appeal from the denial with the U.S. Department of Justice Office of Information on Policy ("OIP"). (Id., Ex. I.)  On July 8, 2010, OIP upheld the FBI's denial of the FOIA request. (Id., Ex. J.)  By letter to Mr. Savage and the NYT dated December 1, 2010, the FBI advised that Exemption 5, pertaining to draft pages, was no longer applicable and released the requested copy of the letter to the Senate Judiciary Committee but redacted the assessment statistics. (Id., Ex. K.)  The FBI asserted that the redactions were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2") applying to internal personnel rules and practices of an agency,[2] and § 552(b)(7)(E) ("Exemption

---

[2] Exemption 2 shields from disclosure records that "relate solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  On March 7, 2011, in Milner v. Dep't. of Navy, 131 S.Ct. 1259, 1265 (2011), the Supreme Court curtailed Exemption 2 to include only those records which "concern the conditions of employment in federal agencies—such matters as hiring and firing, work rules and discipline, compensation and benefits."

7(E)") pertaining to law enforcement.[3] (Id.) The NYT argues in its motion dated February 24, 2011, that these exemptions are inapplicable. (Pls.' Mem. of Law in Supp. of Mot. for Summ J. ("Pls.' Mem.") at 1.) On March 7, 2011, prior to responding to Plaintiffs' motion, the FBI provided the NYT with the unredacted Senate letter containing the assessment statistics, which was sent to the Judiciary Committee on September 15, 2009. (Hardy Decl. ¶ 30; McGraw Decl., Ex. G.) The Senate letter stated that:

> The FBI has initiated 11,667 Type I and Type 2 assessments, 3,062 of which are ongoing. 427 preliminary and full investigations have been opened based upon information developed in these Type I and Type 2 assessments. 480 Type 3, 4, 5, and 6 assessments have been initiated, of which 422 remain open.

(Savage Decl., Ex. B.) Dennis Argall, the FOIA officer who managed the release, states that the Assessment Statistics were released after FBI subject matter experts determined that the release of the numbers initially withheld would "no longer harm any interest protected by either Exemption (b)(2) or b(7)," (Declaration of Dennis J. Argall dated April 28, 2011("Argall Decl.") ¶ 5,) and that this review took place between March 3, 2011 and March 7, 2011. (Id.)

On April 15, 2011, during the pendency of this motion, Mr. Savage, apparently recognizing that the headline for his ensuing article on March 26, 2011 – "FBI Casts Wide Net Under Relaxed Rules for Terror Inquiries, Data Show" – was not supported by the data released, submitted two additional FOIA requests to the FBI seeking further breakdown for assessment classification Types[4] to reflect separately the number of assessments of federal criminal activity

---

[3] Exemption 7(E) shields "records or information . . . [that] would disclose techniques and procedures for law enforcement investigations or prosecutions . . . or would disclose guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).
[4] The six assessment classification types include:
Type 1: Seek information, proactively or in response to investigative leads, relating to activities constituting violations of federal criminal law or threats to the national security;
Type 2: Seek information, proactively or in response to investigative leads, relating to the involvement or role of individuals, groups, or organizations relating to activities constituting violations of federal criminal law or threats to the national security;

4

and assessments of national security threats. (Savage Decl. ¶ 12.) Mr. Savage requested the Assessment Statistics conducted between December 2008 and March 25, 2009 which were provided to the Senate Judiciary Committee, broken down into the number of preliminary and full investigations opened based upon information developed in Type 3 assessments, the number that are still ongoing, and similar information for classification Types 1, 2, and 3 from March 25, 2009 to the present. (Id.)  During oral argument, Defendants pointed out that on August 1, 2011, Mr. Savage's April 15, 2011 FOIA request "was released in full except for program-specific assessment statistics that were withheld under FOIA exemption 1 because they were classified under Executive Order."  (Transcript of Sept. 1, 2011 Oral Argument ("Tr.") at 14.)  Plaintiff did not rebut this statement during argument nor is the Court aware of any administrative appeal on this issue.  In any event, Plaintiffs have failed to exhaust their administrative remedies under FOIA as to the April 15, 2011 FOIA request. See 5 U.S.C. § 552(a)(6)(A)(i).

Plaintiffs' in their summary judgment motion seek a broad declaration by the Court that all assessment statistics – as opposed to the Assessment Request for statistics sought in the Complaint – are public record under 5 U.S.C. § 552 and subject to disclosure. (See Pls.' Reply Mem. at 4; Tr. at 22.)  Defendant contends in its cross-motion for summary judgment that Plaintiffs' claim was mooted by the March 7, 2011 release of the statistics which were the subject of the Complaint. (Def.'s Reply Mem. of Law in Opp. to Pls.' Mot. for Summ. J. and in

---

Type 3: Identify and obtain information about potential targets of or vulnerabilities to criminal activities in violation of federal law or threats to the national security;
Type 4: Obtain information to inform or facilitate intelligence analysis and planning;
Type 5: Seek information to identify potential human sources, assess the suitability, credibility, or value of individuals as human sources, validate human sources, or maintain the cover or credibility of human sources, who may be able to provide or obtain information relating to criminal activities in violation of federal law, threats to the national security, or matters of foreign intelligence interest; and
Type 6: Seek information, proactively or in response to investigative leads, relating to matters of foreign intelligence interest responsive to foreign intelligence requirements.
See http://foia2.fbi.gov/diog/domestic_investigations_and_operations_guide_part2.pdf

Further Support of Def.'s Cross-Mot. for Summ. J. and Mot. to Dismiss ("Def. Reply Mem") at 3.) Plaintiffs, however, argue that its original claim should survive under the voluntary cessation exception to mootness. (Pls.' Reply Mem. at 4.)

## II.     Standard of Review

Summary judgment "is called for in FOIA cases when the "defending agency . . . prove[s] that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982). Summary judgment may only be granted where the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III.    Discussion

As an initial matter, a motion for summary judgment must be based on the claims in the Complaint. Here, Plaintiffs' Complaint demands the documents requested by Mr. Savage's FOIA Request of November 4, 2009 which Mr. Savage later narrowed to the Senate Judiciary Committee letter. Plaintiffs' request for a declaration was limited in the Complaint to a defined term, i.e., a declaration that "the documents sought by the Assessment Request . . . are public under 5 U.S.C. § 552 and must be disclosed." The Complaint does not make a claim that *all* assessment statistics be declared public. Plaintiffs' summary judgment motion nevertheless attempts to broaden their claims to all assessment statistics in an impermissible attempt to avoid mootness. Since the FBI's March 7, 2011 unredacted release of the Assessment Statistics provided to the Senate Judiciary Committee complied with Mr. Savage's FOIA Request in accordance with his later amended request, the NYT's November 4, 2009 FOIA Request is now moot.

Plaintiffs, however, argue that the case is not moot because 1) the FBI is engaged in the unlawful practice of the unwarranted withholding of assessment statistics pursuant to FOIA exemptions, and 2) the discretionary release of the Assessment Statistics on March 7, 2011 does not deprive the Court of adjudicating the legality of the withholding.  Plaintiffs contend that the FBI has acted improperly under FOIA by withholding the Assessment Statistics in reliance on Exemption 2 and Exemption 7(E) without adequate grounds. (Pls.' Reply Mem. at 3-4.) Plaintiffs rely on U.S. Dept. of Justice v. Tax Analysts, 492 U.S. 136, 151 n.12 (1989), for the proposition that "[e]ven when an agency does not deny a FOIA request outright, the requesting party may still be able to claim improper withholding by alleging that the agency has responded in an inadequate manner." (Tr. at 17.)  Additionally, Plaintiffs argue that it is a policy or practice of the FBI to withhold assessment statistics under these Exemptions and thus the case is not moot under a theory of voluntary cessation. See Payne Enters., Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988).  These arguments are without merit.  Defendant's initial withholding under Exemption 2 was not improper under circuit court case law at the time Exemption 2 was invoked. See Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1056-57 (D.C. Cir. 1981).  With regard to Exemption 7(E), the FBI released the requested document after a review by its subject matter experts revealed that the release of the assessment statistics requested by Mr. Savage would no longer harm a protected interest.  Furthermore, Plaintiffs have failed to provide evidence of prior similar instances to support its claim that it is the policy or practice of the FBI to improperly withhold assessment statistics under Exemption 2 or Exemption 7(E).

Additionally, the Court would be unwise to issue a declaration that the initial withholding of the Assessment Statistics under Exemption 2 and Exemption 7(E) were in fact unlawful

because "such a declaration would be an advisory opinion which federal courts may not provide." Payne Enters., Inc., 837 F.2d at 491; see also Better Gov't Ass'n v. Dep't of State, 780 F.2d 86, 91 (D.C. Cir. 1986); Long v. Bureau of Alcohol, Tobacco and Firearms, 964 F. Supp. 494, 497 (D.D.C. 1997).

### IV. Conclusion

Plaintiffs' motion for summary judgment is denied, and Defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

IT IS SO ORDERED.

Dated: New York, New York
       November 7, 2011

                                      Robert P. Patterson, Jr.
                                      U.S.D.J.

Copies of this Order sent to:

*Counsel for the Plaintiffs:*

David Edward McCraw
The New York Times Company (10018)
620 Eighth Avenue
New York, NY 10018
(212) 556-4031
Fax: (212) 556-1009

*Counsel for the Defendant:*

Amy Ann Barcelo
United States Attorney Office
86 Chambers Street
3rd Floor
New York, NY 10007
(212) 637-6559
Fax: (212) 637-2730

Tomoko Onozawa
U.S. Attorney's Office, SDNY (Chambers Street)
86 Chambers Street
New York, NY 10007
(212) 637-2721
Fax: (212) 637- 2686